# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK
# (Buffalo)

**United States of America,**
Plaintiff,

v.  Case No. 1:14-cr-00031-RJA-JJM-1

**Rasheen Newkirk,**
Defendant.



_____/

## RENEWED MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (18 U.S.C. § 3583(e)(1))

**Hon. Richard J. Arcara, U.S.D.J.:**

Mr. Rasheen Newkirk respectfully moves this Court, pursuant to 18 U.S.C. § 3583(e)(1) and Fed. R. Crim. P. 32.1(c), for early termination of his term of supervised release. He has served well over one year of supervision, has been fully compliant, presents no danger to the community, and has demonstrated sustained maturity, rehabilitation, and productive reintegration. His supervised release is scheduled to end **August 31, 2026**; the Court should now terminate it as "no longer necessary to deter criminal conduct or protect the public." § 3583(e)(1).

If the Court is disinclined to grant full termination, Mr. Newkirk alternatively requests targeted modification to remove travel and employment restrictions that impede career advancement (e.g., commercial driving/boxtruck opportunities) and community mentoring, or to place him on administrative/nonreporting status.

## I. Procedural Posture and Prior Ruling

On **May 12, 2025**, the Court denied Mr. Newkirk's pro se motion for early termination, noting that although he had performed "very well" and was compliant, his positive performance was viewed as evidence that supervision "has thus far proven to be an effective framework for his rehabilitation," and the Government and Probation opposed. The Court denied relief after considering 18 U.S.C. § 3553(a)(1), (2)(A)–(D), (4)–(6). (Text Order, 5/12/2025.)

This renewed motion presents **materially changed circumstances** and **additional evidence** of sustained rehabilitation and publicsafety neutrality, together with the practical reality that **less than one year remains** on supervision. See § 3583(e)(1) (court "may" terminate after one year if warranted by conduct and the interest of justice).

## II. Legal Standard

Under **18 U.S.C. § 3583(e)(1)**, after considering the relevant **§ 3553(a)** factors—particularly the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)); the need for deterrence, protection of the public, and rehabilitation (§ 3553(a)(2)(B)–(D)); and the Guidelines and policy considerations (§ 3553(a)(4)–(6))—the Court **may terminate** supervised release "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." The statute imposes no "extraordinary" or "exceptional" conduct requirement; exemplary compliance,

2

demonstrated rehabilitation, and the absence of any publicsafety need are sufficient.

The Judicial Conference has long encouraged early termination for lowrisk individuals who have reintegrated successfully, emphasizing that it conserves scarce supervision resources and poses no heightened risk to public safety. See Guide to Judiciary Policy, Vol. 8E, Ch. 3, § 360.20 (policy endorsing early termination after sustained compliance and risk reduction).

### III. Factual Showing: No PublicSafety Threat & Demonstrated Maturity

**A. Lengthy sentence served; consistent compliance on release**
• Mr. Newkirk received a **151month** custodial term (with concurrent 120 months) and **3 years of supervised release**; he completed BOP programming, was released to the RRC, and has **remained violationfree**.
• He has been consistently compliant with all standard and special conditions; Probation has him on lowintensity reporting.

**B. Stable housing, employment, and community anchors**
• Mr. Newkirk lives with and supports his **son**; at age **50**, he occupies a caretaking role and maintains family stability.
• Employment: He has worked at **Rachel's Mediterranean Grill since April 2023**, earned a **promotion to Assistant Manager**, and continues to work there while seeking advancement.
• Licensure/skills: After release to the Rochester halfway house, he **renewed his forklift license** and remains OSHAaware and workplaceready.
• Career trajectory: He has a **standing opportunity to drive box trucks**

(commercial/lightduty) conditioned on flexibility in work and travel; he has discussed these goals with **Probation Officer Kevin Zhang** and seeks modifications that would allow him to accept such work immediately.

• Service: He plans to mentor atrisk youth through his mother's community program, **"It Takes a Village,"** leveraging lived experience to deter delinquency.

### C. Continued rehabilitation and prosocial structure

• No arrests, no positive tests, no violations; he continues to engage prosocially at home, at work, and in the community.

• Agecrime curve: At **age 50**, criminological risk significantly declines; his conduct corroborates this reduction.

• Employers and community members have **documented support** for his reliability, leadership, and mentoring aptitude; letters and records are being furnished contemporaneously and upon the Court's request.

### D. Clarifications reflected by the record

• Arrested **December 11** and presented **December 13**;

• Sentence was **151 months** (not 70 months);

• The Presentence Investigation Report is **under seal** per routine practice to protect sensitive information; appellate counsel typically may access it subject to the Court's restrictions; • Supervision **expires August 31, 2026**.

### IV. Changed Circumstances Since the May 2025 Denial

1. **Time and Consistency:** Five additional months (and counting) of clean supervision since the denial, with the calendar now approaching the **final**

year of supervision. Courts routinely view the lastyear posture as favoring termination where conduct is exemplary and risk is low.

2. **Documented Employment Progress:** Continued work at Rachel's with managerial responsibilities; renewed certifications enabling advancement; concrete boxtruck opportunities requiring schedule/travel flexibility consistent with a lawabiding livelihood.
3. **Family and Community Commitments:** Ongoing parenting of his son in a shared household; structured plan to mentor youth through "It Takes a Village."
4. **No PublicSafety Need:** Continued absence of violations or lawenforcement contact; stable employment; sober lifestyle and mature decisionmaking.

These developments answer the Court's previous concern that supervision was the "framework" for success. The **evidence now shows success is internalized**: Mr. Newkirk's stability is anchored in family, work, and character—not the leash of formal supervision. Further oversight would be **greater than necessary** to meet § 3553(a)'s aims.

## V. Section 3553(a) Factors, as Incorporated by § 3583(e)(1)

**(a)(1) Nature/Characteristics.** The offense conduct has been fully sanctioned by a lengthy custodial term; postrelease conduct shows matured judgment, stable employment, and caregiving responsibilities.

**(a)(2)(B)–(C) Deterrence & Protection of the Public.** Continued supervision adds no marginal deterrent value; Mr. Newkirk has deterred himself through

5

employment, family accountability, and age related desistance. There is **no publicsafety justification** for further monitoring.

**(a)(2)(D) Treatment/Correctional Needs.** No additional treatment or services are required through supervision; voluntary community engagement and work provide structure.

**(a)(4)– (6) Guidelines/Policy/Parity.** Policy favors focusing resources on higherrisk supervisees; terminating lowrisk, fully compliant individuals promotes parity and efficient allocation of Probation's caseload.

## VI. Addressing Government/Probation Objections

**CareerOffender Label.** The label alone cannot substitute for an individualized assessment under § 3583(e)(1). The inquiry asks what continued supervision achieves **now**, given current risk and conduct. Here, realworld data—years of clean performance, steady employment, family caregiving, and age—show negligible risk.

**"Compliance shows supervision works."** Compliance is a statutory marker of success. When the purpose of supervision—safe reintegration—is achieved, **continuation becomes duplicative** and, for a working parent, burdensome (travel approvals, stigma, scheduling limits) without publicsafety payoff. Section 3583(e)(1) exists to recognize that point and **end supervision**.

## VII. Alternative Narrow Relief

If the Court prefers a graduated approach, Mr. Newkirk requests conversion to **administrative or nonreporting supervision** and removal of travel/employment hurdles that currently limit boxtruck work and mentoring commitments, with the understanding that any slip would reinstate active reporting. This would align conditions with actual risk and life demands while preserving Court oversight.

## VIII. Conclusion

Mr. Newkirk has done exactly what the law and this Court asked: he served his time, returned home, stabilized his family, worked steadily and well, and remained lawabiding. With **less than a year left** on his term and no publicsafety need for continued monitoring, § 3583(e)(1) and the **interests of justice** favor ending supervision now.

**Respectfully submitted,**
/ s / Rasheen Newkirk
Rasheen Newkirk, Pro Se
P.O. Box 514
Buffalo, NY 142150514

Date: Oct 1, 2025

# **CERTIFICATE OF SERVICE**

I certify that on _____, 2025, I served a true and correct copy of the foregoing **Renewed Motion for Early Termination of Supervised Release** by U.S. Mail on:

Clerk of Court
United States District Court, WDNY
2 Niagara Square
Buffalo, NY 14202

United States Attorney's Office, WDNY
138 Delaware Avenue
Buffalo, NY 14202

U.S. Probation Office (Buffalo)
Federal Building, 2 Niagara Square
Buffalo, NY 14202

_____

/ s / Rasheen Newkirk
Rasheen Newkirk, Pro Se